UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Trial for Hire of the Twin Cities, Inc., a Minnesota corporation,

Plaintiff,

v.

1st Choice Employment, Inc., a Minnesota corporation,

Defendant.

Civ. File No. 00-1642 (PAM/SRN)

**MEMORANDUM AND ORDER**

---

This matter is before the Court on Plaintiff's motion for preliminary injunction. For the reasons set forth below, the Court grants Plaintiff's motion.

**BACKGROUND**

Plaintiff Trial For Hire of the Twin Cities, Inc., ("Trial for Hire") is an employment placement service located in the Twin Cities metro area. Trial for Hire is a Minnesota licensee of Triple Seven Enterprises, Inc., for the registered service mark Trial for Hire®.[1] Plaintiff claims to have used the Trial for Hire® service mark since 1992. According to Plaintiff, the mark was first used in 1985, and on December 27, 1988, the United States Patent and Trademark Office ("USPTO") registered the mark under number 1,518,223. On December 13, 1994, an affidavit was filed pursuant to 15 U.S.C. § 1065 concerning the incontestability of the mark, and that affidavit was acknowledged on August 31, 1995.

---

[1] This Court assumes for purposes of this motion that, as such, Plaintiff is an exclusive licensee with standing to sue. (See McHugh Aff. ¶ 4.)

FILED OCT 23 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Defendant 1st Choice Employment ("1st Choice") is a Minnesota corporation with its principal place of business in White Bear Lake, Minnesota, and has provided employment placement services in the Twin Cities area since 1994. 1st Choice describes its business as a "trial to hire" employment agency. Although many employment agencies place workers in temporary assignments for abbreviated periods of time, 1st Choice places skilled workers with employers for an established 300-hour period.[2] 1st Choice pays all wages and benefits during the 300-hour trial period, at the end of which the employer determines whether it will hire the worker permanently.

Initially, 1st Choice used the phrase "trial for hire" in marketing and advertising its services. On June 7, 1996, Plaintiff sent 1st Choice a cease and desist letter regarding the use of the term "trial for hire." 1st Choice asserts that it responded by letter on June 21, 1996, requesting verification of Plaintiff's federal trademark registration, but never received a response. Nevertheless, 1st Choice changed the phrase to "trial to hire" in its advertisements. 1st Choice now uses the phrase "trial to hire" in advertisements on television, in the Minneapolis Star Tribune, in the St. Paul Pioneer Press, and in marketing literature.

On September 9, 1998, and again in 1999, Plaintiff informed 1st Choice of its right to exclusive use of the term Trial for Hire® and any similar mark. On July 12, 2000, Plaintiff filed a four-count complaint alleging claims of service mark and trademark infringement, dilution of a service mark, unfair competition, and injury to business name and mark and

---

[2] Defendant offers temporary assignments on a very limited basis.

trade name. Plaintiff now moves this Court for preliminary relief on its claim for service mark infringement.

## DISCUSSION

The Court considers four factors to determine whether to grant preliminary injunctive relief: (1) the probability of petitioner's success on the merits; (2) the threat of irreparable harm to the petitioner; (3) the threat of harm to the respondent balanced against the harm to the petitioner; and (4) the public interest. See Dataphase Sys., Inc. v. CL Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc). The petitioner bears the burden of proof on the four factors. See Gelco Corp. v. Coniston Partners, 811 F.2d 414, 418 (8th Cir. 1987).

### A. Probability of Success on the Merits

In order to prevail on its service mark infringement claim, Trial for Hire must prove (1) ownership of a valid service mark; and (2) the likelihood of confusion between the infringing and registered mark. See Woodroast Sys., Inc. v. Restaurants Unlimited, Inc., 793 F. Supp. 906, 917-18 (D. Minn. 1992). Registration of a service mark upon the principal register is prima facie evidence of the validity of the mark, the registration of the mark, the registrant's ownership of the mark, and the registrant's exclusive right to use the mark in commerce. See 15 U.S.C. § 1057. Moreover, a mark that meets certain requirements, primarily continuous use for five years after registration, becomes incontestable. See 15 U.S.C. § 1065. Incontestability provides conclusive evidence of the mark's validity, its registration, the registrant's ownership in the mark, and the registrant's exclusive right to use

the mark in commerce.[3] See 15 U.S.C. § 1115(b). Trial for Hire asserts that as the exclusive Minnesota licensee of Triple Seven Enterprises, Inc., for the Trial for Hire® trademark, it has standing to sue for infringement. Trial for Hire argues that it is likely to succeed on the merits, as the Trial for Hire® trademark was registered with the USPTO on December 13, 1994, and became incontestable on August 31, 1995.

However, evidence of incontestable ownership of a trademark is subject to a number of statutory defenses. Here, 1st Choice asserts a fair use defense against Trial for Hire's infringement claim. According to 15 U.S.C. § 1115(b)(4), the "fair use" defense applies when (1) Defendant's use of the term is not as a trademark or service mark; (2) Defendant uses the term fairly and in good faith; and (3) Defendant uses the term only to describe its goods, services, or geographic origin.

Courts examine various factors to determine whether a defendant is using a term as a service mark, including whether (1) the term is used to attract public attention; (2) the term is a prominent element of the package; (3) the phrase is in a different type size or style; (4) the term is set off; and (5) a subordinate phrase actually describes the product being sold. See Woodroast Sys., 793 F. Supp. at 913-14 (citation omitted).

Examining the factors relevant to the determination of use as a service mark, 1st Choice uses the phrase "trial to hire" in its marketing literature and advertising. Specifically,

---

[3] Incontestability of a mark does not affect its strength. See Woodroast Sys., Inc., 793 F. Supp. at 912 n. 10.

1st Choice Employment places the phrase "trial to hire" as a header at the top of a page of its marketing literature, printed in large, bold letters unlike those of the text in the descriptive paragraphs. Below the header, 1st Choice describes its employment service with subordinate phrases. The bold header appears at the top of one of only three pages of text. Thus, the phrase "trial to hire" is a prominent feature of the marketing literature and may be intended to attract consumer attention rather than merely describe Defendant's employment service. See id. (denying summary judgment for the defendant because a material fact dispute existed concerning whether the defendant's use of the phrase "wood roasted" as header on a menu constituted a fair use of Plaintiff's incontestable mark in the word "Woodroast").

Perhaps more troubling is Defendant's website.[4] When printed in hard copy, the phrase "1st Choice Employment - Trial to Hire for Twin Cities Metro Area" appears at the top of the page. The phrase "Trial to Hire for Twin Cities Metro Area" is nearly identical to Plaintiff's company name "Trial for Hire of the Twin Cities, Inc."[5] Accordingly, some evidence indicates that Defendant may have used the mark as a service mark.

With respect to likelihood of confusion, courts consider the following factors: (1) t he

---

[4] See *1st Choice Employment* (visited Oct. 20, 2000) <http:// www.1stchoiceemploy.com>.

[5] Defendant argues that it was not aware that this phrase appeared in connection with its web site, because it hired a web designer who coded the phrase within the Internet hypertext markup language pathway. (See Larson Aff. ¶ 8.) The Court finds that at best, Defendant's argument addresses only the "good faith" prong of the fair use test, but does nothing to advance its position that its use of the phrase "trial to hire" is not as a service mark.

strength of the infringed mark; (2) the alleged infringer's intent to pass off its services as those of another; (3) whether the type of service involved and its costs and conditions of purchase, tend provide consumers with an opportunity to eliminate any confusion that would otherwise exist; (4) whether the marks, examined as a whole, are similar; (5) the degree to which the services or products compete with one another; and (6) evidence of actual confusion. See SquirtCo v. Seven-Up Co., 628 F.2d 1086, 1091 (8th Cir. 1980).

Under the first factor, the parties dispute the mark's strength. All marks may be divided into four broad categories based upon relative strength. These categories in descending order of strength are (1) arbitrary or fanciful; (2) suggestive; (3) descriptive; and (4) generic. See WSM, Inc. v. Hilton, 724 F.2d 1320, 1325 (8th Cir. 1984). As numerous courts have noted, these classifications are not absolutes. Rather, "[t]hese categories, like colors in a spectrum, tend to blur at the edges and merge together, making it difficult to apply the appropriate label." Id.

In this case, Plaintiff asserts that the mark is strong, because it is arbitrary or suggestive in that most consumers have no understanding about the meaning of "Trial for Hire" at first glance. Defendant argues that the term is generic. Although Defendant has demonstrated that one other local company and a handful of companies around the nation have used phrases which include the words "trial" and "hire" to describe employment

services, (see Duea Aff., Ex. C), the Court cannot conclude that the term is generic.[6] Defendant also argues that the phrase "trial for hire" is, at best, descriptive.

A descriptive mark immediately conveys characteristics, qualities or other features of a product and can be protected only if it has become distinctive by acquiring some secondary meaning. See Woodroast Sys., 793 F. Supp. at 912. A suggestive mark requires imagination, thought, or perception to reach a conclusion concerning the nature of the goods. Id. at 911. Absent evidence to the contrary, the Court is inclined to conclude that the phrase "trial for hire" is somewhat suggestive, as it requires some thought to reach a conclusion concerning the nature of Plaintiff's service.

Turning to the second factor, an alleged infringer's intent to pass off its services as those of another may raise an inference of likelihood of confusion. Moreover, if an alleged infringer chooses a similar mark with knowledge of the prior mark, such knowledge may raise an inference of an intent to trade upon a plaintiff's goodwill. See Aveda Corp. v. Evita Mktg., Inc., 706 F. Supp. 1419, 1429 (D. Minn. 1989). In the present case, it is undisputed that Defendant had actual knowledge of Plaintiff's trademark. In fact, Defendant used the registered mark "trial for hire" until Plaintiff demanded that Defendant cease and desist such use. Nevertheless, Defendant chose to use the phrase "trial to hire," rather than other

---

[6] Indeed, Defendant asserts that it intends to prove that the mark is generic "at trial." (See Def. Mem. in Opp. to Prelim. Inj. at 5.) Accordingly, Defendant has failed to successfully challenge the incontestability of the "trial for hire" mark on the grounds that it is generic. See 15 U.S.C. § 1064 (permitting cancellation of a mark's registration if the registered mark becomes the generic name for goods or services).

commonly used phrases in this region, such as temp-to-hire, temp-to-perm, or some other creative alternative. (See Cumming Aff., Exs. A1-A27; B1-B16.) The Defendant's conduct raises an inference of an intent to "pass off" its services as those of Plaintiff, and an inference that the phrase is confusingly similar to "trial for hire." Indeed, examined as a whole, the marks are very similar, distinguishable only by the words "to" and "for." Furthermore, consumers have limited opportunity to eliminate any potential confusion. Both parties operate in the employment service industry in the Twin Cities area, and their services compete insofar as both companies fill vacant jobs with prospective employees. Finally, Plaintiff offers some evidence that it has received telephone calls from potential customers who were responding to Defendant's ads. (See McHugh Aff. ¶ 3.) In sum, the Court finds that at this stage of the litigation, it is at least more probable than not that Plaintiff will succeed on the merits of its service mark infringement claim.

**B. Threat of Irreparable Harm**

In trademark cases, courts may presume irreparable injury from a finding of probable success in proving likelihood of confusion. See Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc., 633 F.2d 746, 753 (8th Cir. 1980). Courts may also consider the potential loss of control over the quality of the plaintiff's product and the risk of damage to the plaintiff's reputation. Woodroast Sys., 793 F. Supp. at 918. Here, Plaintiff has demonstrated both a likelihood of confusion and the potential loss of goodwill and damage to its reputation, and therefore is entitled to the presumption of irreparable harm.

## C. Balance of Harms

The Court also must consider the harm of granting an injunction compared to the harm of denying the injunction. Here, the potential harm to Trial for Hire includes intangible effects such as loss of goodwill and injury to its reputation, which may not be remedied by money damages. See Hillerick & Bradsby Co. v. Christian Bros., Inc., 943 F. Supp. 1136, 1142 (D. Minn. 1996). The potential harm to Defendant is quantifiable only in terms of the expense of creating new marketing literature and advertisements. The balance of harms favors a plaintiff when the plaintiff demonstrates the potential for irreparable harm and the only potential harm to Defendant is financial injury. See Hillerick & Bradsby, 943 F, Supp. at 1142 (citation omitted); see also Woodroast Sys., 793 F. Supp. at 918 (finding that Defendant's continued use of phrase might destroy any secondary value of the mark). Accordingly, the Court finds that the balance of harms also favors granting injunctive relief.

## D. Public Interest

When addressing the public interest factor in the context of trademark infringement, the Court considers the interest in protecting the public from confusion or deception against the interest in a competitive marketplace. See Aveda Corp., 706 F. Supp. at 1432. Plaintiff has used and promoted the "Trial for Hire"® mark since 1992. Plaintiff argues that the public's interest in avoiding confusion is served by preventing Defendant's conduct, which creates confusion and misappropriates the goodwill that the Trial for Hire® mark symbolizes. Defendant argues that the public interest in permitting companies to call a service by its

generic term outweighs Plaintiff's interest. However, Defendant has not demonstrated to this Court's satisfaction that the phrases "trial for hire" or "trial to hire" are generic. Therefore, at this stage of the litigation, this factor also weighs in favor of Plaintiff.

**CONCLUSION**

For the foregoing reasons, and based on all the files, records, and proceedings herein, the Court grants Plaintiff's motion for preliminary injunction.

Accordingly, **IT IS HEREBY ORDERED** that:

A. Plaintiff Trial for Hire's Motion for Preliminary Injunction (Clerk Doc. No. 3) is **GRANTED**; and

B. During the pendency of this matter, Defendant 1st Choice Employment and its agents, servants, employees, and all persons in active concert with them are enjoined and restrained from:

    A. Using the registered service mark "Trial for Hire" or otherwise infringing upon or diluting Plaintiff's "Trial for Hire" service mark by the use of a confusingly similar name;

    B. In any manner infringing upon Plaintiff's rights in the "Trial for Hire" service mark and trade name; and

    C. Printing, promoting, advertising, offering for sale, distributing, selling, or otherwise using or placing in commerce, directly or indirectly, any packaging, labels, advertising displays, promotional literature, checks,

letterhead, business cards, invoices or other business forms or materials bearing or containing a name, designation or mark which includes the phrase "trial for hire," or any variation or simulation of the phrase "trial for hire," including but not limited to the phrase "trial to hire."

Dated: October 23, 2000

Paul A. Magnuson
United States District Court Judge